# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BUILDING OWNERS AND MANAGERS )
ASSOCIATION OF CHICAGO, )
                                       )     Case No. 19-cv-7212
              Plaintiff, )
     v.                            )     Honorable Thomas M. Durkin
                                         )
THE CITY OF CHICAGO, )    Magistrate Judge Sunil R. Harjani
                  Defendant )

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S <u>COMPLAINT</u>**

# **Table of Contents**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   The Ordinance Is Not Preempted By The NLRA. ................................................. 2

    A.  The Ordinance is not preempted under Machinists. ........................................ 2

        1.  The Ordinance is a law of general application. ......................................... 2

            a.   The Ordinance applies broadly. ........................................................ 2

            b.   The Ordinance is general regardless of the number of workers covered by it. ... 4

            c.   The Ordinance is general even if it addresses matters that may be the subject of bargaining. ................................................................................... 6

        2.  The Ordinance is a minimum labor standard. ........................................... 8

        3.  The Ordinance does not force parties to negotiate or agree. ..................... 11

    B.  The Ordinance is valid under Garmon. ........................................................ 12

II.  Plaintiff Fails To State An Equal Protection Claim. ............................................. 12

III. The Ordinance Is A Valid Exercise Of The City's Home Rule Power. ............................ 14

    A.  Workplace scheduling is within the City's home rule authority. ..................................... 14

    B.  Creating a private right of action is within the City's home rule authority..................... 16

CONCLUSION .................................................................................................................. 18

ii

## **Table of Authorities**

**Cases**

520 South Michigan Ave. Assocs., Ltd. v. Shannon, 549 F. 3d 1119 (7th Cir. 2008) .......... passim

Accel Entm't Gaming, LLC v. Vill. of Elmwood Park, 2015 IL App (1st) 143822 ................... 15

Am. Hotel & Lodging Ass'n v. City of Los Angeles, 834 F. 3d 958 (9th Cir. 2016) ................... 8

Ampersand, Inc. v. Finley, 61 Ill. 2d 537 (Ill. 1975) ............................................................. 17, 18

Associated Builders & Contractors of So. Cal., Inc. v. Nunn, 356 F. 3d 979 (9th Cir. 2004) ....... 3

Cal. Grocers Ass'n v. City of Los Angeles, 52 Cal. 4th 177 (2011) ............................................. 9

Cannon v. Edgar, 33 F. 3d 880 (7th Cir. 1994) ................................................................. 11, 12

Christensen v. Doyle, 530 U.S. 1271 (2000) ............................................................................ 16

City of Carbondale v. Yehling, 96 Ill. 2d 495 (1983) ................................................................ 18

City of Evanston v. Create, 85 Ill. 2d 101 (1981) .................................................................... 17

Commerce v. Bragdon, 64 F. 3d 497 (9th Cir. 1995) ................................................................. 3

Concerned Home Care Providers, Inc. v. Cuomo, 783 F. 3d 77 (2d Cir. 2015)..................... 3, 6, 9

Doe v. Piper, 165 F. Supp. 3d 789 (D. Minn. 2016)................................................................. 16

FCC v. Beach Commc'ns, Inc., 508 U.S. 307 (1993)................................................................. 13

Fitzgerald v. Racing Ass'n of Cent. Iowa, 539 U.S. 103 (2003)................................................. 14

Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987) ...................................................... passim

Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F. 3d 1287 (7th Cir. 1996)............. 4

Gupta v. Morgan Stanley Smith Barney, LLC, 934 F. 3d 705 (7th Cir. 2012) ........................... 18

Hope Clinic v. Ryan, 195 F. 3d 857 (7th Cir. 1999).................................................................. 16

Hope Clinic v. Ryan, 249 F. 3d 603 (7th Cir. 2001).................................................................. 16

Kalodimos v. Vill. of Morton Grove, 103 Ill. 2d 483 (1984) ..................................................... 14

King-Cowser v. School Dist. 149, 2008 WL 4104354 (N.D. Ill. 2008) ...................................... 14

iii

LaSalle Nat. Tr., N.A. v. Vill. Of Mettawa, 249 Ill. App. 3d 550 (1993) .................................... 14

Lavidas v. Bradshaw, 512 U.S. 107 (1994) ......................................................................... 8

Little Rock Family Planning Servs. v. Rutledge, 397 F. Supp. 3d 1213 (E.D. Ark. 2019).......... 16

McLorn v. City of East St. Louis, 105 Ill. App. 3d 148 (1982).................................................. 18

Metro. Life Ins. Co. v. Mass., 471 U.S. 724 (1985) ................................................................ 5, 6

Nat'l Paint & Coatings Ass'n v. City of Chicago, 45 F. 3d 1124 (7th Cir. 1995)................. 13, 14

Palm v. 2800 Lake Shore Drive Condo. Ass'n, 401 Ill. App. 3d 868 (1st Dist. 2010) ............... 17

Paper Supply Co. v. City of Chicago, 57 Ill. 2d 553 (1974)..................................................... 18

Park Pet Shop, Inc. v. City of Chicago, 872 F. 3d 495 (7th Cir. 2017) ..................................... 15

People v. Valentine, 50 Ill. App. 3d 447 (1997) ...................................................................... 18

Quela v. Payco-Gen. Am. Credits, Inc., 84 F. Supp. 2d 956 (N.D. Ill. 2000) ............................ 18

R.I. Hospitality Ass'n v. City of Providence, 667 F. 3d 17 (1st Cir. 2011)............................... 3, 9

Restaurant Law Center v. City of New York, 360 F. Supp. 3d 192 (S.D.N.Y. 2019).................... 9

Smith v. City of Chicago, 457 F. 3d 643 (7th Cir. 2006) .......................................................... 14

Washington Serv. Contractors Coal. v. District of Columbia, 54 F. 3d 811 (D.C. Cir. 1995)....... 9

Wroblewski v. City of Washburn, 965 F. 2d 452 (7th Cir. 1992) ......................................... 13, 14

iv

## INTRODUCTION

The Fair Workweek Ordinance ("Ordinance") is a legitimate exercise of the City's police power to mitigate economic strain and social disruption to Chicago workers and families. Plaintiff fails to offer any reason why this effort is unlawful.  First, Plaintiff claims that the Ordinance is preempted by the National Labor Relations Act because it is like an amendment struck down in 520 South Michigan Ave. Assocs., Ltd. v. Shannon, 549 F. 3d 1119 (7th Cir. 2008), but the two are nothing alike.  The amendment in 520 South Michigan was an extreme outlier – it amended a statewide set of baseline workplace protections and provided targeted, heightened benefits only to one subset of workers in a single industry within a single subdivision of the State.  Nor did the amendment permit employers and employees to negotiate alternative terms.  The Ordinance, in contrast, establishes common minimum standards that apply broadly to all types of covered workers in many different industries throughout the entirety of the City. Moreover, the Ordinance provides bargaining flexibility because parties may negotiate a waiver of its requirements.  Plaintiff also falls short in trying to state an equal protection claim. Legislative judgments like those in the Ordinance upheld so long as any rational basis is conceivable, without judicial factfinding.  That is the case here, as it is reasonable to require scheduling protections for lower-wage employees who work for large employers in the 7 industries covered by the Ordinance.  Finally, Plaintiff's Illinois home rule challenges fail because the Ordinance in general is within the scope of the City's broad authority to regulate workplace welfare, and the Ordinance's private right of action provision in particular does not place an improper burden on the state courts.  For these reasons and others explained below, the Complaint should be dismissed.

**ARGUMENT**

I.      **The Ordinance Is Not Preempted By The NLRA.**

    A.      **The Ordinance is not preempted under <u>Machinists</u>.**

As the City explained, the Ordinance is valid under <u>Machinists</u>, because it establishes minimum labor standards.  It is an exercise of the City's broad police power to protect workers and their families from the economic and social harm caused by late scheduling changes.  The Ordinance does not run afoul of <u>Machinists</u> because it does not regulate the mechanics of the bargaining process:  It says nothing about whether workers and employers must negotiate, the bargaining tools they are allowed to use, or whether they must agree on any topic.  And its protections fall on all covered workers regardless of whether they are in a union.  <u>See</u> Memorandum in Support of City's Motion to Dismiss ("Mem."), Dkt. No. 18-1, at 5-10.  In response, Plaintiff contends that the Ordinance is preempted because it is not a law of general application, is not a minimum labor standard, and forces negotiation over particular terms.  <u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint ("Opp."), Dkt. No. 24-1, at 7-13.  None of these arguments has merit.

    1.  **The Ordinance is a law of general application.**

    a.  **The Ordinance applies broadly.**

The Ordinance is a law of general application, for it applies equally to all qualifying employers and employees within 7 broadly defined industries.  Plaintiff offers no case in which a court struck down a law of similar breadth.  Indeed, courts routinely uphold laws much narrower than the Ordinance, in that they apply to only one or a few industries.  <u>See</u> Mem. at 7-8.

Plaintiff's sole support for its argument that the Ordinance is not generally applicable is <u>520 South Michigan</u>; Plaintiff argues that the Ordinance "is akin" to the law struck down in that

2

case. Opp. at 10-11. But the two are in no way alike. The hotel amendment in 520 South Michigan was a hyper-specific departure from a general statute governing workplace breaks. The amendment imposed special break requirements for only one subclass of employees (hotel room attendants) within one industry (hotels) in one subdivision of the State (Cook County). The Seventh Circuit repeatedly emphasized that it was this combination of unique features that made the amendment too narrow to qualify as a legitimate workplace regulation under Machinists. See 549 F. 3d at 1130, 1131, 1134, 1136, 1139. And other circuits construing 520 South Michigan have echoed the point. See Concerned Home Care Providers, Inc. v. Cuomo, 783 F. 3d 77, 86 n.8 (2d Cir. 2015); R.I. Hospitality Ass'n v. City of Providence, 667 F. 3d 17, 33 n.15 (1st Cir. 2011).

Nothing in 520 South Michigan suggests that a much broader law like the Ordinance is preempted. Plaintiff argues that 520 South Michigan declined to follow cases upholding regulations that apply only to one industry, Opp. at 10, but that reading – even if correct[1] – is irrelevant, because the Ordinance applies to far more than a single industry. Nor does the Ordinance give rise to the Seventh Circuit's concern that narrow laws like the hotel amendment, which benefit only a subset of employees in one particular industry, "discourage[] collective bargaining by encouraging lobbying for targeted legislation." Opp. at 10 (citing 520 South

---

[1] Plaintiff overreads 520 South Michigan. There, the Seventh Circuit "distinguishe[d]" the hotel amendment from the "single industry" cases, because the amendment was also "limited by location." 549 F. 3d at 1131. Further, to the extent that the court suggested in *dicta* that the "single industry" precedent was not well-reasoned, see id. (citing favorably Chamber of Commerce v. Bragdon, 64 F. 3d 497 (9th Cir. 1995)), that does not help Plaintiff, because the Ordinance applies to far more than just a single industry. Moreover, after its decision in Bragdon, the Ninth Circuit clarified that a law is not invalid simply because it regulates a single industry. See Associated Builders & Contractors of So. Cal., Inc. v. Nunn, 356 F. 3d 979, 990 (9th Cir. 2004).

Michigan, 549 F. 3d at 1139).[2]  An ordinance that applies to 7 industries is not "targeted."  And far from reflecting an end run around the bargaining process, the Ordinance allows parties to negotiate a waiver of its requirements, meaning that bargaining over scheduling issues can continue.  This is yet another crucial difference with 520 South Michigan, where the court explained that the inability to negotiate around the hotel amendment's requirements weighed in favor of preemption.  See 549 F. 3d at 1134.

> **b.  The Ordinance is general regardless of the number of workers covered by it.**

Plaintiff also argues that the Ordinance is not a law of general application because the number of employees it covers is too small.  Opp. at 9-10.  But Plaintiff cites no authority for the idea that the number of employees determines whether a law is of general application.  Not even 520 South Michigan adopted such a test.  Rather, the court assessed the scope of the hotel amendment by examining it on its face; as Plaintiff recognizes, the court invalidated the law because it "applied to one occupation, in one industry, in one county."  Opp. at 8.  The court did not examine how many employees were covered by the amendment or their percentage of the workforce.  Likewise, Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987), upheld the challenged law simply by looking at its terms, even though the law might have covered just a handful of employees compared to the state's overall workforce:  The law applied only to those employees who (i) worked at large employers (those with more than 100 employees at a plant) that decided to close a plant or relocate it more than 100 miles away, and (ii) had been on the job

---

[2]  While Plaintiff insinuates that the Ordinance resulted from a desire to give unions an advantage in upcoming bargaining negotiations, Opp. at 11, the article that Plaintiff attaches does not purport to support this, and such a conclusion would be foolhardy.  See, e.g., Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F. 3d 1287, 1293 (7th Cir. 1996) ("Government actions may be taken for a multiplicity of reasons, and any number of people may be involved in authorizing the action.").

at the closed or relocated plant for more than three years.  See id. at 5.  See also 520 South
Michigan, 649 F. 3d at 1130 (explaining that the law in Fort Halifax "applied only to larger
layoffs or distant relocations").  The Court did not suggest that the law's validity depended on
how many large plants existed, how many of them closed or relocated, or how many employees
at those plants had been working long enough to qualify for the severance pay.

 Not only is Plaintiff's test contrary to the caselaw, it is also unworkable.  The number of
employees in the industries covered by the Ordinance (and in the larger workforce to which they
would be compared) surely fluctuates on a monthly and yearly basis.  Plaintiff would thus have a
statute's legality turn on the fortuity of how many employees happened to be employed at the
time of litigation, meaning that a law valid today may become invalid 6 months from now even
though its terms do not change.  That is inconsistent with Machinists doctrine, which turns on the
legal question of whether a law interferes with "conduct that Congress intended to be
unregulated."  Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 749 (1985). See also id. at 752-55.

 Further, even if Chicago employment numbers were relevant under Machinists,
Plaintiff's statistics are a poor fit.  To show the percentage of Chicago workers who are
purportedly covered by the Ordinance, Plaintiff relies on data from the U.S. Bureau of Labor
Statistics.  Opp. at 9-10.  But as Plaintiff's own exhibit shows, that data is drawn from the
"Chicago-Naperville-Elgin metropolitan statistical area" – a geographic area that encompasses
14 counties in Illinois, Indiana, and Wisconsin, with Chicago being just a subset of one of those
counties (Cook County).  See Dkt. 24-1 at Page ID 136.  See also
https://www.bls.gov/oes/current/msa_def.htm#16980 (listing counties comprising the statistical
area).  Plaintiff does not explain why these aggregate, regional statistics are an accurate

reflection of Chicago employment numbers, nor does Plaintiff show that the industry definitions used by the Bureau of Labor Statistics match those in the Ordinance.[3]

### c.  The Ordinance is general even if it addresses matters that may be the subject of bargaining.

Finally, there is nothing to Plaintiff's argument that the Ordinance is preempted because it provides substantive protections that may also be the subject of collective bargaining.  See Opp. at 10-11.  Indeed, laws often set baseline requirements that can benefit employees *or* employers, and in that sense impact one side's bargaining position vis-à-vis the other.  "Both employers and employees come to the bargaining table with rights under state law that form a 'backdrop' for their negotiations," including, for instance, default rules allowing employers to run their workplaces as they see fit unless employees negotiate protections in a collective bargaining agreement.  Fort Halifax, 482 U.S. at 21.  Even though these laws may "indirectly affect[] how employers and employees bargain," they are not preempted under Machinists because "[they] do[] not favor or disfavor collective bargaining, eliminate particular bargaining tools, or dictate the details of particular contract negotiations."  Concerned Home Care Providers, 783 F. 3d at 86 (citations and internal quotations omitted).  "[T]he Court has recognized that it cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States."  Metro. Life, 471 U.S. at 757 (internal quotations omitted); Mem. at 8-9.

---

[3] Plaintiff seemingly critiques the Ordinance for not including "[s]everal other large, lower-wage industries," such as education, office and administrative support, and transportation, and for excluding smaller employers within the industries that are covered.  Opp. at 9-10.  But Plaintiff makes no argument that school teachers, office clerical workers, or bus and train drivers face late-notice scheduling changes, and, as the City has explained, excluding smaller employers from regulatory requirements is sensible and commonplace.  See Mem. at 11-12.

Plaintiff argues that it is "a distinction without a difference" to say that the Ordinance establishes baselines rather than regulates the mechanics of how employers and employees interact during the bargaining process. See Opp. at 13. But the fact that the Ordinance is silent about bargaining mechanics is indeed a critical reason why it is not preempted, as just explained. See also Mem. at 5-6, 8. As even 520 South Michigan observed, "[t]he question" is whether a law "establishes a minimum labor standard that does not interfere with collective bargaining." 549 F. 3d at 1130. Plaintiff itself ventures that the "judicial focus is on the nature of the activity as opposed to the method of regulation[.]" Opp. at 13. Here, the activity addressed by the Ordinance is workplace standards rather than negotiation mechanics.

The presence of the waiver provision does not alter the analysis. Plaintiff complains that employers will have to give up something in negotiations for employees to agree to a waiver. See Opp. at 15. Maybe so, but that does not mean the Ordinance is preempted. Indeed, the same could have been said about the law upheld in Fort Halifax. To escape that law's severance pay requirements, an employer may have had to agree to employee demands on other issues so that employees would agree to the employer's desired severance pay terms. The law was upheld nonetheless, despite the employer's argument that, by applying as a default, the law upset the bargaining dynamic because it "undercut[] an employer's ability to withstand a union's demand for severance pay." See 482 U.S. at 20. Indeed, as the City explained, the freedom to negotiate out of a labor standard *enhances* a law's validity under Machinists, see Mem. at 9, a point endorsed by the Seventh Circuit in 520 South Michigan, see 549 F. 3d at 1134. Plaintiff responds that the City's cases are distinguishable because they addressed claims that the ability to negotiate undermined (rather than supported) a law's validity by making the law optional rather than a genuine standard. Opp. at 15-16. But Plaintiff does not explain why that posture

7

matters, and it does not.  In <u>Fort Halifax</u>, for example, the crux of the Court's analysis was on how the ability to opt out of the law related to the collective bargaining process, and the Court concluded that the provision, if it impacted that process at all, did so favorably under <u>Machinists</u> because it the enhanced the parties' freedom to negotiate.  That is exactly what the Ordinance's waiver provision does here.[4]

## 2.  The Ordinance is a minimum labor standard.

Plaintiff also argues that the Ordinance is preempted because it is not a "minimum" labor standard, as its requirements are "strict" and "burdensome."  Opp. at 11-12.  These claims are entirely conclusory; Plaintiff makes no effort to explain how the Ordinance's requirements impact it or its members.  And because the Ordinance does not apply to existing collective bargaining agreements, <u>see</u> § 1-25-030, and because the collective bargaining agreements of Plaintiff's members do not expire until Spring 2021 at the earliest, <u>see</u> Compl. ¶ 33, they will have at least another year (on top of the year they've already had since the Ordinance's enactment) to adjust their practices to the Ordinance's requirements.

More importantly, however, a requirement can still be a minimum labor standard even though it is strictly defined and regulates important aspects of the employment relationship. Indeed, laws requiring health care benefits or severance pay can burden employers just as much

---

[4] Plaintiff contends that only one of the cases cited by the City involved "actual" opt-out provisions, by which Plaintiff means a situation where the labor standard does not apply only if there is an express waiver of the standard in a collective bargaining agreement, as opposed to where the law does not apply merely if a collective bargaining agreement exists.  Opp. at 16 (conceding that <u>Am. Hotel & Lodging Ass'n v. City of Los Angeles</u>, 834 F. 3d 958 (9th Cir. 2016), addressed a waiver provision "similar" to the Ordinance).  But at least one other case cited – <u>Fort Halifax</u> – addressed a law requiring an express indication that the parties were adopting alternative terms.  <u>See</u> <u>Lavidas v. Bradshaw</u>, 512 U.S. 107, 131 (1994) (describing <u>Fort Halifax</u> as such).  More importantly, Plaintiff does not explain why these distinctions matter, and they do not, for the reasons discussed above.

– if not more so – than scheduling notice requirements, yet the Supreme Court upheld them in Metro. Life and Fort Halifax.  Similarly, there may be no aspects of the employment relationship more material to employers than who the employer may employ, and what the employer must pay them.  See Cal. Grocers Ass'n v. City of Los Angeles, 52 Cal. 4th 177, 219 (2011) (Grimes, J., dissenting) ("Work force selection is perforce one of the most basic 'economic power realities.'").  But laws requiring employee retention and minimum wages are routinely upheld as valid, non-preempted exercises of the police power.  See R.I. Hospitality Ass'n, 667 F. 3d at 32-33; Cal. Grocers, 52 Cal. 4th at 199-208; Washington Serv. Contractors Coal. v. District of Columbia, 54 F. 3d 811, 818 (D.C. Cir. 1995); Am. Hotel and Lodging Ass'n v. City of Los Angeles, 834 F. 3d 958 (9th Cir. 2016); Concerned Home Care Providers, 783 F. 3d at 85-86. See also Mem. at 6-7.

Plaintiff contends that these cases did not "involve laws that impose complex, substantive terms and conditions of employment that are traditional subjects of collective bargaining and would be difficult for a union to negotiate for like the Ordinance."  Opp. at 15.  But wages, health care benefits, employee retention, and severance pay are important terms of any employment relationship, and can be the subject of vigorous negotiation.  And requirements pertaining to these subjects can be complex, see Concerned Home Care Providers, 783 F. 3d at 81-83 (describing mechanics of minimum wage requirements), or require employers to alter their normal business practices, see Restaurant Law Center v. City of New York, 360 F. Supp. 3d 192, 200-202 (S.D.N.Y. 2019) (requirement that employers create and administer payroll deduction system).  The Ordinance imposes no more of a burden than the laws upheld in these cases.

Here again, 520 South Michigan does not aid Plaintiff.  In that case, the hotel amendment was not a minimum standard for two reasons: (1) it went beyond the state's general law

establishing minimum break requirements for all workers and adopted specific and additional break requirements for hotel room attendants only, and (2) it established a severe set of enforcement and remedy provisions. Under those provisions, (a) employers had to pay three times the employee's regular hourly rate for each day of violation; (b) employers were presumed to have unlawfully terminated an employee if the termination came after the employee complained that the employer violated the law, no matter how much time passed between the complaint and the termination, and (c) employers had the burden of proof to show that a legitimate reason was the sole reason for the termination. 549 F. 3d at 1123, 1134-35. The court viewed these as "stringent" measures that "impact[ed] the ability of an employer to discipline or fire employees, pursuant to the terms of a collective bargaining agreement." Id. at 1137.

The Ordinance does none of this. Rather than alter a common baseline of requirements by adding new protections only for certain workers in a single industry, it establishes the baseline, which applies to all employers covered by the Ordinance. Nor does the Ordinance impose treble damages and strict presumption and burden of proof requirements that interfere with termination decisions. And while Plaintiff contends that the Ordinance "encourages litigation" rather than dispute resolution, Opp. at 12, just the opposite is true: Employees must pursue informal dispute resolution at the City's Department of Business Affairs and Consumer Protection before filing suit, Ordinance §1-25-140, and, to the extent that employers feel that even that is not enough to curb litigation risk, employers remain free to negotiate a waiver of the Ordinance altogether, an option that was not available in 520 South Michigan. To be sure, see Opp. at 11, the hotel amendment in 520 South Michigan also allowed prevailing employees to receive attorneys' fees and costs, 549 F. 3d at 1123, and the Ordinance does the same, see Ordinance § 1-25-140(c). But that is the only similarity between the two, and it hardly impugns

10

the Ordinance.  The Seventh Circuit made scant mention of the fee and cost provisions in striking down the hotel amendment.  As explained above, the primary concern was that the amendment adopted heightened requirements only for a very narrow group of employees, and that it imposed severe damages and presumption and burden of proof requirements on employers.  See 549 at 1134-35, 1137.

### 3.  The Ordinance does not force parties to negotiate or agree.

Last, Plaintiff argues that the Ordinance is invalid under Machinists because it forces parties to a collective bargaining agreement to "negotiate as to specific substantive conditions." Opp. at 12.  Plaintiff rests this argument on Cannon v. Edgar, 33 F. 3d 880 (7th Cir. 1994), but that case is inapposite.  In Cannon, a gravediggers union went on strike, and cemeteries locked out the strikers.  This led to burials being delayed for up to a month.  Afterward, Illinois enacted a statute forcing gravediggers and cemeteries to negotiate and agree upon – by a date certain – the creation of a labor pool of gravediggers who could perform burials during future labor disputes.  The court held that this violated Machinists because it intruded upon the bargaining process by "order[ing] the parties to negotiate as to a specific substantive condition – that of a pool of workers to perform internments during labor disputes.  And more invasive, the [statute] order[ed] the parties to agree on a pool of workers, or face sanctions for failure to do so."  Id. at 885.  The Ordinance, in contrast, does not require Plaintiff to negotiate over a particular substantive term, demand that agreement be reached, or penalize any party for failing to agree to a waiver.  It merely establishes a backdrop of minimum scheduling requirements, and then allows labor and management the *option* of negotiating them away via a waiver.

In sum, the Ordinance is a generally applicable law that sets minimum labor standards and does not require negotiation or any particular result.  It is therefore lawful under Machinists.

11

**B.    The Ordinance is valid under <u>Garmon</u>.**

For the same reasons just explained, the Ordinance does not violate <u>Garmon</u> preemption, either.  Again resting on <u>Cannon</u>, Plaintiff argues that the Ordinance is invalid under <u>Garmon</u> because it regulates matters that are "ordinarily negotiated," and "supplants" bargaining with "mandated substantive terms."  Opp. at 16, 17.  But the problem in <u>Cannon</u> was not that the law addressed subjects that could otherwise be the subject of bargaining; any number of labor standards do that.  Rather, the problem was that the law was a "direct intrusion" into the collective bargaining process because it "require[d] the parties to actually agree on a particular pool of workers."  <u>Cannon</u>, 880 F. 3d at 884, 885.  The Ordinance does nothing like that.  And while Plaintiff complains that the Ordinance will "cut off" Plaintiff's ability to negotiate scheduling issues, Opp. at 18, that does not make the Ordinance invalid under <u>Cannon</u>, and, in any event, it is wrong:  As explained, Plaintiff remains free to negotiate a waiver of the Ordinance's requirements and otherwise negotiate its own scheduling terms.

For all of these reasons, the Ordinance is not preempted by the NLRA, and Count I should be dismissed.

## II.    Plaintiff Fails To State An Equal Protection Claim.

The Ordinance is lawful under equal protection doctrine because there are rational reasons for applying its scheduling regulations to large employers, and to employees within the 7 designated industries.  Larger firms are able to bear the costs of compliance, and workers in the covered industries are likely to face changes in work schedules and the ensuing economic and family disruption.  <u>See</u> Mem. at 10-14.

Even though Plaintiff concedes that the Ordinance is subject to the deferential rational basis standard, Plaintiff argues that its claim cannot be dismissed at the 12(b)(6) stage so long as

Plaintiff merely alleges that the Ordinance lacks a rational basis. See Opp. at 18-19. This is not supported even by Plaintiff's primary case – Wroblewski v. City of Washburn, 965 F. 2d 452 (7th Cir. 1992) – which *affirmed* a 12(b)(6) dismissal of an equal protection claim. Id. at 460 (explaining that conclusory assertion that a policy is without rational basis "is insufficient to overcome the presumption" of rationality). Indeed, to have an equal protection claim, Plaintiff cannot merely allege lack of rational basis – it must negate "every conceivable basis which might support" the Ordinance. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993).

Plaintiff offers no argument negating the rational reasons for the Ordinance. Instead, Plaintiff tries to shift the burden to the City, arguing, for instance, that the Ordinance's distinctions are not "obvious," and that City did not conduct an analysis that justifies them. See Opp. at 19. But there is no such burden on government. Courts "never require a legislature to articulate its reasons for enacting a statute…." Beach, 508 U.S at 315. Further, Plaintiff's argument implies that the claim must proceed to development of a factual record going to the merits of the City's rationales. But as the Seventh Circuit explained when upholding a City ordinance under the rational basis standard, a legislative decision "is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Nat'l Paint & Coatings Ass'n v. City of Chicago, 45 F. 3d 1124, 1127 (7th Cir. 1995) (citing Beach, 508 U.S. at 315). "Outside the realm of 'heightened scrutiny' there is [ ] never a role for evidentiary proceedings" because the court can devise or speculate as to the rational basis for a statute. Id. at 1127. Nor must the Ordinance's classifications be empirically correct. Deciding who is covered by a law is inherent in any legislative judgment, and legislatures have great leeway to decide where to draw the lines. See Mem. at 13. When it comes to legislative decisions of the sort at issue here, the "power to decide, to be wrong as well as to be right on

13

contestable issues is both privilege and curse of democracy" that is left to the political branches of government. National Paint, 45 F. 3d at 1127. See also Smith v. City of Chicago, 457 F. 3d 643, 652 (7th Cir. 2006) ("even an incomplete, inadequate, or inaccurate explanation will not equate to a lack of rational basis").[5]

"[J]udicial review is at an end once the court identifies a plausible basis on which the legislature may have relied." Fitzgerald v. Racing Ass'n of Cent. Iowa, 539 U.S. 103, 108-09 (2003). See also Wroblewski, 965 F. 2d at 460 (affirming dismissal after identifying rational bases for policy). Because Plaintiff cannot negate the rational bases for the City Council's choices reflected in the Ordinance, Counts II and III should be dismissed.

## III.    The Ordinance Is A Valid Exercise Of The City's Home Rule Power.

### A.    Workplace scheduling is within the City's home rule authority.

Plaintiff's first home rule challenge contends that the Ordinance as a whole is invalid because the City lacks home rule authority to legislate as to workplace welfare. But as the City explained, courts examine three factors to determine whether a subject falls within a municipality's home rule authority, see Kalodimos v. Vill. of Morton Grove, 103 Ill. 2d 483, 501 (1984), and application of those factors here shows that the Ordinance is a valid exercise of the City's home rule authority, see Mem. at 15-17. Plaintiff wholly ignores these factors, which govern here, as even Plaintiff's principal case recognizes. See LaSalle Nat. Tr., N.A. v. Vill. Of Mettawa, 249 Ill. App. 3d 550, 575 (1993). Nor does Plaintiff even attempt to rebut the City's analysis under those factors.

---

[5]  King-Cowser v. School Dist. 149, 2008 WL 4104354 (N.D. Ill. 2008), cited by Plaintiff, is not to the contrary (and in any event does not control). Among other reasons, the case did not involve a challenge to a legislative enactment, but rather a school's administrative decision to bar certain children from attending.

Instead, Plaintiff lodges a single, cursory argument for why the Ordinance exceeds the City's home rule authority: Wages elsewhere in the state are lower than in Chicago, and, therefore, "Illinois has a more vital interest than the City" in the impact of scheduling changes on low-wage workers. Opp. at 21. This ignores that, even if wages are lower elsewhere in the State than in Chicago, so too are the costs of living. More importantly, though, Plaintiff has no response to the numerous reasons, apart from wage levels, for why the Ordinance pertains to the City's own concerns and affairs. Those include the number of employees and families in Chicago that are impacted by workplace scheduling changes, the number of large employers in Chicago, and local government's traditional interest in workplace welfare. See Mem. at 15-17. Even if employees elsewhere in the State are also impacted by scheduling changes, that does not mean the City cannot regulate as to its own residents. See Mem. at 16. Thus, as the Seventh Circuit recognized in Park Pet Shop, Inc. v. City of Chicago, Chicago's home rule authority allowed it to regulate puppy mills, due to "the emotional and financial costs incurred by individual Chicagoans" who care for troubled pets, even though "State and local governments alike are vitally concerned with issues of animal control and welfare[.]" 872 F. 3d 495, 500 (7th Cir. 2017). See also Accel Entm't Gaming, LLC v. Vill. of Elmwood Park, 2015 IL App (1st) 143822, ¶¶ 35, 41 (holding that municipality had specific interest in the problems of video gaming within its borders, even if State was also interested in the issue). Likewise here, the Ordinance pertains to the City's local concerns in the emotional, financial, and other hardships experienced by Chicago workers who juggle multiple jobs while attending to "their families, health, and education, and other obligations[.]" Ordinance § 1-25-010. The Court should thus dismiss Plaintiff's home rule challenge to the Ordinance as a whole.

15

**B.      Creating a private right of action is within the City's home rule authority.**

The Court should also reject Plaintiff's second, and more particularized, home rule claim, which challenges the Ordinance's establishment of a private right of action.  Initially, Plaintiff lacks standing to sue over that provision because the only defendant is a government entity.  See Mem. at 17-18 (discussing Hope Clinic v. Ryan, 249 F. 3d 603, 604 (7th Cir. 2001) (per curiam)).  Relying on two district court decisions from outside this Circuit, Plaintiff argues that this rule does not apply if the government has "some connection" to enforcing the law, such as through criminal sanctions.  Opp. at 21-22 (citing Little Rock Family Planning Servs. v. Rutledge, 397 F. Supp. 3d 1213, 1264 (E.D. Ark. 2019), and Doe v. Piper, 165 F. Supp. 3d 789, 801-02 (D. Minn. 2016)).  The City has that connection here, Plaintiff believes, because the City may enforce penalties under the Ordinance, and certain steps must occur at the City's Department of Business Affairs and Consumer Protection before a litigant can sue under the private right of action.  See Opp. at 21-22.

Plaintiff's argument does not withstand Hope Clinic.  In that case, the statutes providing a private right of action also allowed the government to enforce them by prosecuting criminal felonies for certain violations.  See 249 F. 3d at 605. See also Hope Clinic v. Ryan, 195 F. 3d 857, 862-63 (7th Cir. 1999) (providing overview of the challenged partial birth abortion statutes), vacated on other grounds by Christensen v. Doyle, 530 U.S. 1271 (2000).  Despite this governmental connection to the statutes, the plaintiffs lacked standing to challenge the private right of action provisions when asserted only against the governmental defendants.  Plaintiff thus lacks standing here to challenge the private right of action provision.

Plaintiff's challenge also fails on the merits.  As the City explained, the Illinois Constitution's grant of home rule authority allows the City to establish a private cause of action,

16

and Illinois courts have upheld a Chicago ordinance doing just that.  See Mem. at 18-19

(discussing Palm v. 2800 Lake Shore Drive Condo. Ass'n, 401 Ill. App. 3d 868, 878 (1st Dist.

2010), aff'd 2013 IL 110505).  Plaintiff responds that the private right of action is beyond the

City's home rule authority because it places an "improper burden on the state judicial system," as

it could cause state judges to have to make damages and fee calculations.  Opp. at 22.  But the

same could be said about the Chicago ordinance upheld in Palm.  Indeed, a portion of the Palm

decision was about the appropriate amount of attorney's fees owed to a party who brought a

private cause of action under that ordinance, with the trial court accepting and considering

various evidence on the issue of fees, and the Appellate Court then reviewing the trial court's

decision.  See 401 Ill. App. 3d at 879-80.  All of that was done without any suggestion that the

task placed an improper burden on the courts.

Moreover, Plaintiff's "improper burden" argument is not even supported by Plaintiff's

principal case, Ampersand, Inc. v. Finley, 61 Ill. 2d 537, 542 (Ill. 1975).  There, the court struck

down a county ordinance requiring that litigants pay a $2 filing fee to bring civil cases in state

court.  The court found that this amounted to the municipality impos[ing] a "price of admission

to the courts of the State of Illinois."  Id. at 543.  The Ordinance, in contrast, does not restrict

access to the state court system.  It simply creates a *new* cause of action that supplements

existing legal remedies.  See City of Evanston v. Create, 85 Ill. 2d 101, 116 (1981) (holding that

Ampersand did not apply to ordinance that "define[d] notice procedures, duties of the parties,

and remedies available," and explaining that "[c]ourts are regularly called upon to enforce or

interpret municipal ordinances").[6]  The City recognizes that Quela v. Payco-Gen. Am. Credits,

---

[6] Plaintiff's other cases are easily distinguished, as they invalidated municipal efforts to dictate
the rules of procedure for courts to follow once a case was filed, see City of Carbondale v.

Inc., relied on Ampersand to invalidate a county ordinance creating a private right of action. 84 F. Supp. 2d 956, 959 (N.D. Ill. 2000). The City respectfully submits that Quela erred in its reading of Illinois law, as the Illinois Constitution, as interpreted by Illinois Supreme Court, allows home rule entities to create offenses that can be litigated in state court. See Mem. at 18-19. Further, Quela predated the Illinois Appellate Court's decision in Palm, which specifically addressed and upheld the imposition of remedies under a City ordinance creating a private right of action. This Court should follow that later decision from a state court on this issue of state law. See Gupta v. Morgan Stanley Smith Barney, LLC, 934 F. 3d 705, 711 (7th Cir. 2012). For both of these reasons, the Court should not follow Quela here. Count IV should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

Date: May 13, 2020

ANDREW WORSECK
andrew.worseck@cityofchicago.org
OSCAR PIÑA
oscar.pina@cityofchicago.org
JORDAN A. ROSEN
jordan.rosen@cityofchicago.org
City of Chicago Department of Law
Constitutional and Commercial
  Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-7129 / 742-0797 / 744-9018

*Attorneys for Defendant*

Respectfully submitted,

MARK A. FLESSNER,
Corporation Counsel for the City of Chicago

By:      /s/ Andrew Worseck
              Chief Assistant Corporation Counsel

---

Yehling, 96 Ill. 2d 495 (1983), and Paper Supply Co. v. City of Chicago, 57 Ill. 2d 553 (1974); or to prevent a municipality from having to comply with state law, see McLorn v. City of East St. Louis, 105 Ill. App. 3d 148 (1982), People v. Valentine, 50 Ill. App. 3d 447 (1997). The Ordinance does not do either of these things.